# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| BRITTANY ROGERS, on Behalf of Herself and All Others Similarly-situated, | ) ) ) |
| *Plaintiff*, | ) COLLECTIVE ACTION ) ) CASE NO. 4:18-CV-74-JHM |
| v. | ) ) |
| THE WEBSTAURANT STORE, INC. | ) JURY DEMANDED ) |
| *Defendant.* | ) ) ) |

## COMPLAINT

1. Comes Plaintiff Brittany Rogers (hereinafter collectively referred to as "Plaintiff"), on behalf of herself and all others similarly-situated, and brings this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") against Defendant The WEBstaurant Store, Inc., which is engaged in the business of selling commercial kitchen equipment through the website www.webstaurantstore.com, and which employs customer support representatives and similar non-exempt employees paid on a salary (non-hourly) basis at several locations around the country (including one in Madisonville, Kentucky) for violations of The WEBstaurant Store, Inc.'s statutory obligation to pay its customer support representative employees and similarly-situated non-exempt employees paid on a salary basis overtime for all work performed by employees in excess of forty hours per week. Specifically, The WEBstaurant Store, Inc. has willfully engaged in the practice of not recording employees' time for all work performed, and not compensating employees with appropriate payment for such work in excess of forty hours in a work week, in violation of the FLSA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims of Plaintiff and those similarly-situated pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b), because The WEBstaurant Store, Inc. operates a customer support facility located in the Western District of Kentucky, in Madisonville, Hopkins County, Kentucky (the "Madisonville facility") and employed Plaintiff at that facility and thus The WEBstaurant Store, Inc. conducts business and can be found in the Western District of Kentucky.

## PARTIES

4. Plaintiff Brittany Rogers is a resident of Hopkins County, Kentucky. Plaintiff worked for The WEBstaurant Store, Inc. at the customer support facility in Madisonville, KY from April 13, 2015 to December 19, 2017 (although Plaintiff stopped working for The WEBstaurant Store, Inc. for some months in 2015 and then returned to work later in 2015) and was at all times a non-exempt employee of The WEBstaurant Store, Inc. within the meaning of the FLSA.

5. Plaintiff brings this action on behalf of herself and all similarly-situated current and former employees of TWSI who (A) were employed in a non-exempt position, including as a representative in TWSI Customer Support or Logistics Departments, (B) were paid on a salary basis while employed in said position, (C) were employed at any time within three years of the filing of this action (i.e, from May 14, 2015 through May 14, 2018), (D) worked forty or more hours in one or more workweeks within three years of the filing of this action, and (E) have not been fully compensated by TWSI for all hours worked in excess of forty hours per workweek.

6. Defendant The WEBstaurant Store, Inc. (hereafter, "Defendant" or "TWSI") is a Pennsylvania for-profit corporation engaged in the business of selling commercial restaurant equipment (such as that utilized in kitchens of restaurants).

7. Defendant may be served with process by service on Morgan Stone, who is Defendant's registered agent listed with the Commonwealth of Kentucky Secretary of State, at 410 Commerce Drive, Madisonville, KY 42431, which is Defendant's registered agent address listed with the Commonwealth of Kentucky Secretary of State.

8. An integral part of selling TWSI's products is maintaining customer support.

9. TWSI maintains customer support facilities and otherwise employs employees similarly-situated to Plaintiff in Madisonville, Kentucky; Albany, Georgia; Dayton, Nevada and Pennsylvania (the Lancaster, Pennsylvania area, including Lititz, Pennsylvania).

10. The facility in Madisonville, Kentucky is in Hopkins County, within the District of the United States District Court for the Western District of Kentucky.

11. TWSI's annual sales have, at all times relevant to this Complaint, exceeded $500,000.00.

12. At all times relevant to this Complaint, TWSI has regularly engaged in interstate commerce and was an employer within the meaning of the FLSA, 29 U.S.C. §§ 206-207.

## **GENERAL ALLEGATIONS**

13. Plaintiff was employed as an employee at the Madisonville, Kentucky customer support facility operated by TWSI.

14. The Madisonville, Kentucky customer support facility is on the same grounds as a warehouse facility operated by TWSI for shipping products to customers.

15. TWSI maintained a timeclock system for its warehouse employees at the Madisonville facility (and, upon information and belief, maintains a timeclock system for its warehouse employees at its other facilities where it employs both warehouse and customer support employees) whereby warehouse employees are instructed to clock in upon arriving at TWSI's facility and beginning work, and to clock out upon ending work.

16. The purpose of the timeclock system maintained by TWSI at the Madisonville, Kentucky facility for warehouse employees was (and, indeed, the purpose of such timeclock systems in general is) to enable the employer to accurately record each employee's actual hours worked so that the employer may pay the employee in accordance with such actual hours worked, including overtime pay, if earned in a particular work week.

17. However, although such a timeclock system for customer support employees and similar non-exempt employees would have been simple and easy for TWSI to install and utilize, TWSI chose not to maintain or utilize such a timeclock system whereby such employees clock in upon arriving at TWSI's facility and beginning work, and clock out upon ending work.

18. Instead, TWSI told its customer support employees and similarly-situated non-exempt employees that they would be paid on a "salary" basis, scheduled them for five eight-hour-per-day shifts per week, and paid the employees the same amount every pay period, despite the fact that it was aware that Plaintiff and employees similarly-situated to Plaintiff were regularly being made to work, and regularly working, more than eight hours a day and more than forty hours per week, and despite the fact that TWSI was aware that overtime must be paid to non-exempt employees regardless of whether or not the employer characterizes such employees as "salary" employees.

19. Specifically, TWSI engaged in at least three practices that deprived Plaintiff and employees similarly-situated to Plaintiff of overtime pay under the FLSA, each of which is described in more detail below, but which can be generally described as (A) failing to pay employees for time worked in excess of forty hours per week and for which TWSI knew the employee was working because the employee was logged in to TWSI's customer support or similar computer system, which records log-in and log-out times, (B) failing to pay employees for time worked (and intentionally not recorded by TWSI) by employees preliminary and postliminary to logging in to TWSI's customer support system, including time opening the facility, preparing the workstation, and logging in, time logging out, closing the workstation and preparing the facility for closing, and time attending training sessions and other meetings, and (C) requiring employees under "performance improvement plans" to perform additional work relating to those plans outside of such employees' regularly-scheduled five eight-hour shifts per week, but not paying the employees for such work.

### I. TWSI Fails to Pay Customer Support Representatives and Those Similarly-situated for Hours Logged into TWSI's Computer System.

20. In order to coordinate their customer support activities, TWSI has each customer support representative "log in" on her workstation shortly after arriving at work.

21. This allows TWSI to know which representatives are available in order to route incoming customer inquiries to available customer support representatives.

22. TWSI schedules its customer support representatives for particular shifts of eight hours per day (not including unpaid lunches, where allowed), and carefully monitors to ensure that customer supports representatives are at work on time to begin work by the beginning of the assigned shift.

23. For example, TWSI would assign a particular employee with a shift of from 9:00 a.m. Central to 5:30 Central, with a scheduled half-hour break.

24. TWSI instructs its customer support representatives to log out of TWSI's customer support system at the end of their work engaging with customers.

25. However, because it would be unreasonable from the customer's standpoint if the customer support representative simply ended the communication with the customer at the scheduled end of the customer support representative's shift without responding to the customer's inquiry, it was common that customer support representatives would work beyond the scheduled end of the representative's shift.

26. When this would occur, the representative would not "log out" of TWSI's customer support system until after the end of the representative's scheduled shift, and TWSI's customer support system would automatically record the number of hours that the representative was "logged in" to the system, showing both a "log in" time and a "log out" time for each session.

27. Indeed, TWSI's customer support system would automatically record the number of hours that each representative was "logged in" every day that the representative worked.

28. Accordingly, by using their own internal customer support system and similar computer systems and viewing the number of hours that each representative was "logged in," TWSI was able tell when employees had worked more than forty hours in a week and pay overtime, if and when it chose to do so.

29. Indeed, occasionally, management would email a report showing a particular employee's hours worked to the employee, with a request that the employee reduce her remaining shifts in the workweek; for example, management would send an email to an

employee on Wednesday with a report showing the hours the representative was "logged in" on Tuesday, with the text of the email saying something to the effect of "it looks like you stayed until 6:15 yesterday, please come in 45 minutes late tomorrow."

30. However, this "system" of attempting to adjust representatives' shifts to keep their total hours worked somewhat close to forty per week was utilized inconsistently and non-systematically, and, as a result, representatives regularly worked (as was shown, upon information and belief, by the time data of "logged in" time shown on TWSI's customer support and similar computer systems) more than forty hours per week.

31. However, until at least April, 2018, TWSI never paid overtime, despite knowing that its non-exempt employees paid on a salary basis regularly worked more than forty hours per week.

32. Further, TWSI acknowledged that it intentionally chose not to pay overtime, at least in circumstances when an employee's overtime for a given day was less than 15 minutes.

33. Specifically, Plaintiff had the following exchange with her supervisor, Tricia Wilkerson, on Tuesday, November 7, 2017:

Brittany Rogers: Hey! I am so sorry for being late! It turned out the fuse to my starter blew so it was not the battery. Hopefully it is fixed for good now since I change out the fuse. I am happy to stay over to make up the time I missed today. On Sunday I did have a call that ran over. I left about 15 minutes late. I was not going to say anything about it however if I could deduct that from the 15 minutes I owe that would be great. Otherwise I am happy to make up the full 25 minutes no problem if you do not want me to do that.

Tricia Wilkerson: Typically we are looking at any time over 15 minutes that we would want to give back. Usually 15 minutes is a reasonable amount of time to finish things up for the day and leave. If you would like to stay over today that would be fine. We can just say 15 minutes staying over this evening will work.

34. Upon information and belief, TWSI has confirmed on other occasions to employees similarly-situated to Plaintiff that it had an intentional policy of not paying overtime for hours worked in excess of forty per week.

35. Upon information and belief, by analyzing TWSI's own records, it will be possible to calculate for Plaintiff and each similarly-situated employee the exact number of hours each employee was "logged in" to TWSI's customer support system, and thereby calculate with precision a portion of the overtime TWSI failed to pay to its customer support representatives, in violation of the FLSA.

## II. TWSI Fails to Pay Plaintiff and Similarly-Situated Employees for Work Preliminary and Postliminary to Hours Logged into TWSI's Customer support System.

36. In addition to failing to pay for the time its own records show that Plaintiff and similarly-situated employees were "logged in," TWSI failed to record the time it required its employees to work while not "logged in" to TWSI's computer system, and this time resulted in hours worked in excess of forty per workweek.

37. Specifically, after arriving at work, Plaintiff and similarly-situated employees were made to perform certain work prior to the time they would show as "logged in" to TWSI's computer system.

38. For instance, Plaintiff and similarly-situated employees would have to turn on their computer, wait for their computer to boot up, ensure that the computer downloaded needed software updates, and, if so, reboot the computer to complete the software updates.

39. Further, Plaintiff and similarly-situated employees would have to actually perform the "log in" process of logging into TWSI's customer support system.

40. In addition, after "logging out" of TWSI's customer support system Plaintiff and similarly-situated employees were required to perform work for TWSI before they could leave.

41. For instance, Plaintiff and similarly-situated employees had to log out of their system, turn off their computer, and ensure that their workspace was reasonably clean.

42. In addition, TWSI conducted regularly scheduled weekly training sessions, during which Plaintiff and similarly-situated employees would log out of the customer support system.

43. Plaintiff and similarly-situated employees would also log out of the customer support system at other times while performing TWSI work, such as while running to local store to obtain supplies needed for TWSI's operations.

44. TWSI could easily have used a "timeclock" system whereby Plaintiff and similarly-situated employees "clocked in" upon arriving at work, which system (A) TWSI used in the same facility for warehouse employees and (B) would have captured the actual time Plaintiff and similarly-situated employees spent performing work but not "logged in" to TWSI's customer support or other computer system.

45. TWSI knew that (A) it was required to pay Plaintiff and similarly-situated employees overtime pay for hours worked in excess of forty per week, (B) that Plaintiff and similarly-situated employees were regularly working more than forty hours per week and (C) that a "timeclock" system such as that TWSI used for its warehouse employees would enable TWSI to accurately record the actual time worked by Plaintiff and similarly-situated employees so that TWSI could appropriately pay overtime pay.

46. However, despite this knowledge, TWSI intentionally chose not to use a "timeclock" system and to emphasize to Plaintiff and similarly-situated employees that they were "salary" employees in order to exploit misconceptions of Plaintiff and similarly-situated

employees regarding whether they were entitled to overtime pay, and to illegally pay avoid paying overtime pay.

47. Although TWSI knew that Plaintiff and similarly-situated employees were entitled to overtime pay, TWSI never paid Plaintiff and similarly-situated employees overtime pay until at least April, 2018.

### III. TWSI Fails to Pay Employees for "After Hours" Work Relating to Performance Improvement Plans.

48. TWSI had a policy of utilizing a "performance improvement plan" with respect to certain of its employees.

49. As part of a "performance improvement plan," the employee would be asked to perform work outside of the hours of their regularly-scheduled shift. This work included review by the employee of the employee's own work, review of company literature, and writing essays about company "principles."

50. Employees under a "performance improvement plan" were specifically instructed to perform the work outside of their regular working hours, and that the employee would not be paid for this work.

### IV. Allegations Common to All of TWSI's Illegal Practices.

51. The administrative exemption available under the FLSA did not apply to the work of Plaintiff and similarly-situated employees paid on a salary basis (including customer support employees) because, among other things, their primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

52. Indeed, to the contrary, the work of Plaintiff and similarly-situated employees paid on a salary basis (including customer support employees) was regimented and controlled by management policies, and consisted primarily of repeatedly instructing customers in how to

utilize Defendant's website or similar tasks which did not involve the exercise of discretion or independent judgment.

53. Further, upon information and belief, Defendant itself categorized Plaintiff and similarly-situated employees paid on a salary basis (including customer support employees) as non-exempt under the FLSA in its own documents, although it was careful not to publicize this fact to Plaintiff and the similarly-situated employees paid on a salary basis (including customer support employees) whose FLSA rights it was violating.

54. This unlawful conduct by TWSI has been widespread, repeated and consistent with respect to Plaintiff and similarly-situated employees paid on a salary basis (including customer support employees).

55. Furthermore, upon information and belief, although Plaintiff was employed as a non-exempt customer support representative paid on a salary basis, Defendant employs other non-exempt employees in other "departments," including its Logistics Department (the employees of which perform tasks relating to communicating regarding coordination of customer orders; these tasks are very similar to the tasks and work performed by the customer support representatives – the primary distinction between the work is Logistics Department employees communicate with manufacturers and suppliers, whereas the customer support perform the same types of tasks and work, only with customers) on a salary basis.

56. These other employees are similarly-situated to Plaintiff in that such employees are non-exempt, yet the practice described above were also applied by Defendant to such employees, resulting in such employees being illegally deprived of overtime pay.

57. Plaintiff brings this action against TWSI because TWSI has willfully engaged in a pattern and practice of unlawful conduct by declining to record and pay for all of the time it requires or permits its members of the proposed class to work, in violation of the FLSA.

58. TWSI knew or should have known that its supervisory and management personnel permit or require Plaintiff and other members of the proposed class to perform work which is for the benefit of TWSI, and which is integral to TWSI's business, without appropriate compensation, including time in connection with the unlawful practices described above.

59. The conduct of TWSI, set forth above, has been willful, in bad faith, and has caused significant damages to Plaintiff and other members of the proposed class.

## COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff brings this action on behalf of herself and the following proposed classes of similarly-situated employees:

> all current and former employees of The WEBstaurant Store, Inc. who have held non-exempt positions for which the employee was paid on a salary basis (including employees in its Customer Support, Logistics, and other departments) while employed in the United States at any time from the date three years prior to the filing of this action (i.e., at any time from May 14, 2015 through May 14, 2018), who worked in excess of forty hours per week in one or more workweeks during such period, and who have not been fully compensated for such overtime hours worked in violation of the FLSA.

61. The non-exempt employees of TWSI have been subject to the unlawful practices alleged herein, and therefore, are similarly-situated to the named plaintiff in this collective action. The proposed class members work in similar jobs and are subject to the same pay practices.

62. The employment policies, practices and agreements of TWSI raise questions of fact common to the class including:

  a. whether TWSI has engaged in a pattern or practice of permitting or requiring Plaintiff and members of the proposed class to work in excess of forty hours per workweek, including (i) work while "logged in" to TWSI's customer support system or similar computer system and (ii) work preliminary and postliminary to such "logged in" work, all for the benefit of TWSI and without appropriate compensation, in violation of the FLSA;

  b. whether TWSI has engaged in a pattern or practice of refusing to pay overtime pay for work performed "after hours" relating to performance improvement plans;

  c. whether TWSI has engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiff and members of the proposed class, in violation of the FLSA;

  d. whether the conduct of TWSI was willful;

  e. whether Plaintiff and members of the proposed class are entitled to lost wages, liquidated damages and the other relief requested.

63. The claims of the named Plaintiff are similar to those of the proposed class members, in that Plaintiff has been subject to the same conduct as members of the putative collective action and Plaintiff's claims are based on the same legal theory as members of the collective action.

64. Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff's consent to join this action is attached hereto as Exhibit 1.

## **VIOLATION OF FLSA – NONPAYMENT OF OVERTIME – PLAINTIFF AND THOSE SIMILARLY-SITUATED**

65. Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

66. TWSI has willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

   a. failing to keep accurate records showing all the time it permitted Plaintiff and members of the proposed collective action to work, from the first compensable act to the last compensable act, which has resulted in the denial of compensation at an overtime rate as required by the FLSA, for all time worked in excess of forty hours in a work week; and

   b. permitting and/or requiring Plaintiff and members of the proposed collective action to perform integral and indispensable activities (work) before and after the regular paid work time, and in addition to working forty hours in a work week, for the benefit of TWSI and without compensation at the applicable federal overtime rates.

67. As a result of TWSI's violations of the FLSA, Plaintiff and those similarly-situated to her suffered damages, including their lost overtime, for which they should be awarded compensatory damages, liquidated damages, and attorney's fees and other reasonable litigation expenses.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court:

A.	Issue process and bring Defendant before the Court;

B.	Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C.	Empanel a jury for the trial of all issues of fact;

D.	Enter a judgment awarding Plaintiff and similarly-situated persons joining this litigation damages from Defendant, including compensation for unrecorded work time, interest, and liquidated or exemplary damages, in amounts to be proven at trial;

E.	Award Plaintiff and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

F.	Grant Plaintiff such other further and/or general relief, legal and/or equitable relief, to which Plaintiff is entitled or which the Court otherwise proper.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff Brittany Rogers*