UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:18-CV-00074-JHM

**BRITTANY ROGERS, on behalf of**
**Herself and All Others Similarly-situated**                              **PLAINTIFF**

V.

**THE WEBSTAURANT STORE, INC.**                                           **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Injunction [DN 9]. Plaintiff also filed a supplemental memorandum in support of her motion [DN 10]. Defendant filed a response and a supplemental response [DN 12, DN 14]. The Court held a hearing on June 20, 2018. Fully briefed and argued, this matter is ripe for decision.

## I. BACKGROUND

### A. Allegations in the Complaint

On May 14, 2018, Plaintiff, Brittany Rogers, filed a civil action against Defendant, The WEBstaurant Store, Inc. (hereinafter "Webstaurant"), alleging that Webstaurant failed to pay overtime compensation to Rogers and others similarly situated in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Complaint ¶1.) Rogers was employed by Webstaurant at the customer support facility in Madisonville, Kentucky, from April 13, 2015 to December 19, 2017, as a customer support specialist. Rogers alleges Webstaurant engaged in three practices that deprived her and similarly situated employees overtime pay under the FLSA: (1) failing to pay employees for time worked in excess of forty hours per week and for which Webstaurant knew the employee was working because the employee was logged in to

Webstaurant's customer support or similar computer system, which records log-in and log-out times, (B) failing to pay employees for time worked (and intentionally not recorded by Webstaurant) by employees preliminary to and after logging in to Webstaurant's customer support system, including time opening the facility, preparing the workstation, and logging in, time logging out, closing the workstation, preparing the facility for closing, and time attending training sessions and other meetings, and (3) requiring employees under "performance improvement plans" to perform additional work relating to those plans outside of such employees' regularly-scheduled five eight-hour shifts per week, but not paying employees for such work. (Complaint ¶ 19.)

Webstaurant filed an answer denying that it failed to pay the overtime compensation. On June 13, 2018, Plaintiff filed a Motion for Conditional Certification, Expedited Discovery, and Court-Authorized Notice [DN 8].

**B. Motion for Temporary Restraining Order**

On June 14, 2018, Plaintiff filed an Emergency Motion for Temporary Restraining Order prohibiting Defendant from communicating with putative class members about FLSA claims and attempting to purport to settle FLSA claims [DN 9] and filed a supplemental memorandum for TRO [DN 10]. On June 15, 2018, Defendant filed a response [DN 11]. The events leading up to this current motion are detailed below.

On May 25, 2018, Dave Groff, President of Webstaurant, sent an email to the employees of Webstaurant indicating as follows:

> Hi Everyone,
>
> I wanted to make you aware that a former employee in KY, Brittany Rogers, has filed a lawsuit against the company. Brittany or her attorney may be contacting you for information or to invite

> you to join her in suing Webstaurant. You are under no obligation to take any action.
>
> Brittany is claiming that she was not compensated fairly. We do not believe that claim is true. Part of our culture is doing the right thing. We take that seriously, and we have always made fair compensation one of our highest priorities. I also want to ensure you that we would never retaliate against any employee that makes claims against the company in good faith.
>
> We are informing you of this now because we want to be transparent about what's going on, and we don't want you to be surprised or confused by any potential communication that you receive from Brittany or her attorney. This is all of the information that we have for you at this time. We will share more information as it becomes available.
>
> If you have any questions or concerns about this matter, please contact Mike Meck.
>
> Thanks,
> Dave

(May 25, 2018, Dave Groff Email.)

On May 25, 2018, Plaintiff's counsel emailed representatives of the company complaining that with this above email the company communicated inaccurately about the Plaintiff's claims and demanded the company provide a copy of Plaintiff's complaint to its employees. In response to the email, counsel for the Defendant indicated: "First, the communication my client sent out this afternoon is none of your business and my client does not need nor will it seek your blessing prior to communicating any information throughout the company. Second, I would highly encourage you to familiarize yourself with SCR 3.130(4.5) because the communications you have sent to current and former employees were potentially in violation of the Supreme Court Rule and we certainly intend to explore this issue in greater depth. Third, your demand is rejected." (Strause Letter/Email to Foster, May 25, 2018.)

3

On June 11, 2018, Groff once again sent an email to the employees of Webstaurant which provided:

> Hello,
>
> As I mentioned a few weeks ago, we are committed to doing the right thing and ensuring competitive and fair compensation for all of our employees.
>
> Prior to March 24th, you were paid for 40 hours of work per week. Deviations from your standard schedule were to be reported to your supervisor.
>
> To our knowledge, we addressed all schedule deviations. However, we do not want it to be even remotely possible that any unreported deviations happened without our knowledge. We want to go above and beyond, and we always want to error on the side of taking care of our team. Therefore, we will be doing a payment for you in the amount of 1 hour per week for the number of weeks you were employed in the 2 years leading up to March 24, 2018. You will be paid at a rate of 1.5 your current hourly pay.
>
> I can assure you that we are doing this for the reasons mentioned above. This payment is not a result of the lawsuit that I informed you of recently. We had been working on this before we had any knowledge of Brittany Rogers suing the company. I stand by what I said on that matter.
>
> Your Team Leader will be providing you with additional details, including the amount that you will be paid and when it will be paid.
>
> If you have any questions or concerns, please reach out to Mike Meck.
>
> Also, I want to remind everyone that internal communication such as this email are confidential and intended only for you as the recipient. To be clear, you should not be sharing this information with others outside the company.
>
> Thanks,
> Dave

(June 11, 2018, Groff Email).

At some point that week, Defendant had its supervisors distribute a Waiver and Release to its employees in exchange for the company's payment of the overtime wages discussed in the June 11, 2018, email. The Waiver and Release provided:

> I,[the employee], working in the [a particular state] facility, knowingly and voluntarily accept a one-time payment from the Webstaurant Store, Inc. in the amount of _____ (the "Payment) in full and complete satisfaction of any unpaid overtime compensation that may be due and owing to me as of the date of my execution of this Waiver and Release. Accordingly, I agree I have been correctly paid for all time I have worked and that I am not entitled to any other payment for salary, wages, overtime, compensatory time, or any other form of payment or compensation for any work I performed during my employment through the date of my execution of this Waiver and Release.
>
> I acknowledge and agree this Waiver and Release shall not be construed as an admission of liability by The Webstaurant Store, Inc. and that it further expressly denies any violation of any of its policies and procedures, or violation of any federal, state, or local laws or regulations.
>
> By accepting this Payment, I hereby unconditionally release and forever discharge The Webstaurant Store, Inc., their agents, officers, employees, successors and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, demand for unpaid wages and overtime, attorneys' fees, sums of money, charges, complaints and demands whatsoever, in law or equity, of any and every kind, nature and character, known or unknown, which I may now have arising under any federal, state or local, wage-hour, or labor laws including, but not limited to any and all claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. I expressly waive my right to participate in an FLSA collective action or to bring an individual action under the FLSA or any similar state law or local law.
>
> I understand and agree the terms and conditions of this Waiver and Release shall be forever treated as confidential and shall not be disclosed by me to any person except my attorneys, accountants, spouse or as required by law.
>
> I have carefully read this Waiver and Release prior to signing it and I understand the terms contained herein. I have had

> the opportunity to be advised by independent legal counsel as to the legal effect of this Waiver and Release, and have exercised that opportunity if it was my choice to do so. I am entering into and executing this Waiver and Release as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever.

(Waiver and Release, DN 9-7, DN 12-1.)

Plaintiff filed this motion for a temporary restraining order and injunction to prohibit Defendant from communicating with the putative class members about FLSA claims and attempting to settle FLSA claims in order to preserve the integrity of the FLSA notice process. Plaintiff maintains that Defendant should not have engaged in communications regarding the lawsuit, but once it did, it should have corrected its false statements that Plaintiff's claim is "that she was not compensated fairly" and that "[t]his is all of the information that we have for you at this time" by providing a copy of Plaintiff's complaint to its employees. Further, Plaintiff argues that Defendants are attempting to trick employees who sign the "waiver" into thinking, if and when they later receive a notice from the Court, that they are prohibited from joining the action. Plaintiff maintains that such conduct violates the FLSA's requirement that settlement be court-approved and usurps the authority and function of the notice to be approved by the Court. Plaintiff argues that while prior restraints on a party's speech are generally disfavored under the First Amendment, it is appropriate to enjoin the employer from communicating directly or indirectly with putative class members about this lawsuit. Myers v. Memorial Health System Marietta Memorial Hospital, 2017 WL 1407572 (S.D. Ohio April 20, 2017); Mueller v. Chesapeake Seafood House Associates, LLC, 2018 WL 1898557 (D. Md. April 20, 2018).

Specifically, Plaintiff seeks an injunction ordering the Defendant: (A) to cease and desist from communicating with the putative class members about this action or the members' FLSA rights in any way other than to send the email next described, (B) to send an email to all of the

recipients of both of Defendant's emails referenced herein; (C) to file with the Court a certificate that it has sent such email, along with the email addresses to which such email was sent, to which the May 25 email from Groff was sent and to which the June 11 email was sent, and (D) to cease and desist from accepting or delivering purported proposed waivers of rights to pursue claims against The WEBstaurant Store, Inc. under the FLSA, including the purported proposed waivers delivered June 13, 2018. At the hearing, Plaintiff further requested an expedited briefing schedule for the conditional class certification motion, a list of all employees that executed the Waiver and Release, and attorney's fees incurred in filing this current motion.

In response, Webstaurant argues that Plaintiff lacks standing to move for a Temporary Restraining Order. Additionally, Webstaurant contends that it has not engaged in any improper communications with its own employees and did not convey any false or misleading information regarding this litigation. Webstaurant maintains that Groff's communication was benign, alerting his employees that Rogers or her attorney may be contacting them to join in the suit against Webstaurant, and affirmatively conveyed that employees would not be retaliated against for making claims against the company in good faith. Webstaurant argues that it has engaged in no such action to coerce or retaliate against its employees.

## II. STANDARD

While the Plaintiff seeks a preliminary injunction, the Court notes that the typical preliminary injunction analysis is not appropriate here. The Court will instead address this dispute under the Court's authority to govern the conduct of counsel and parties in FLSA collective actions. District courts have "'both the duty and the broad authority' to govern the conduct of counsel and parties in class actions brought under Rule 23 of the Federal Rules of Civil Procedure and collective actions brought under the FLSA." Agerbrink v. Model Serv. LLC,

2015 WL 6473005, at *2 (S.D.N.Y. Oct. 27, 2015), partially vacated by district court sub nom. Agerbrink v. MSA Models, 2017 WL 4876221 (S.D.N.Y. May 23, 2017)(quoting Gulf Oil Company v. Bernard, 452 U.S. 89, 100 (1981)). See also Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989) (noting "same justifications" identified in Gulf Oil for "governing the conduct of counsel and the parties" apply in collective actions). "Although there is nothing inherently improper about a party's communication with potential class members prior to certification, judicial intervention is warranted when communications pose 'a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.'" Agerbrink, 2015 WL 6473005, *3 (citing Brown v. Mustang Sally's Spirits & Grill, Inc., 2012 WL 4764585, *3 (W.D.N.Y. Oct. 5, 2012)). "A district court may prevent confusion and unfairness by prohibiting and correcting communication that is inaccurate, unbalanced, misleading, or coercive, or which improperly attempts to encourage class members not to join the suit." Id.

"This supervisory authority exists even before a class is certified." Id (citing In re Initial Public Offering Securities Litigation, 499 F.Supp.2d 415, 418 n. 13 (S.D.N.Y. 2007); Piper v. RGIS Inventory Specialists, Inc., 2007 WL 1690887, at *7 (N.D. Cal. June 11, 2007) (noting courts may limit pre-notice communications where party has engaged in misleading or improper communications or where they are inconsistent with court-authorized notice); Ralph Oldsmobile Inc. v. General Motors Corp., 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001) ("[A] court's power to restrict communications between parties and potential class members [ ] appl[ies] even before a class is certified.")). "Indeed, the need for a district court to ensure that all parties act fairly is especially great during the early stages of FLSA litigation. Because formal notice to potential plaintiffs is sent only after conditional certification, 'pre-certification, ex parte

communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety.'" Agerbrink, 2015 WL 6473005, *3(quoting Billingsley v. Citi Trends, Inc., 560 Fed. Appx. 914, 921 (11th Cir. 2014)). Moreover, "[b]ecause FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'" Billingsley, 560 Fed. Appx. at 924; see also Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003)("Defendants' conduct is more egregious in this collective action than it would be in a class action because potential class members must opt into the collective action rather than opt out as in a class action.").

"Although the Court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members." Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003). "'Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties.'" Lewis v. Huntington Nat. Bank, 789 F. Supp. 2d 863, 871 (S.D. Ohio 2011)(quoting Belt, 299 F. Supp. 2d at 667-68.). "'Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit." Id.

Furthermore, case law reflects that "'[a]s commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment

9

[c]oncerns. Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order." Lewis, 789 F. Supp. 2d at 871 (quoting Belt, 299 F. Supp. 2d at 667-68.).

### III. DISCUSSION

#### A. Standing

Defendant first argues that Plaintiff does not have standing to move for a temporary restraining order because neither Plaintiff nor Plaintiff's counsel represent the putative class at this time. According to the Defendant, the ABA Rule 4.2 provides: "A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired." (ABA Rule 4.2.) Accordingly, Defendant argues that because Plaintiff and her counsel do not represent the putative class they have no standing to even move for the relief that they seek.

The Court rejects Defendant's argument that the Plaintiff lacks standing to bring this current motion. As reflected in the case law cited above, courts have consistently recognized that the district court's Rule 23(d) authority and FLSA authority extends to communications between counsel and prospective class members. See Gulf Oil v. Bernard, 452 U.S. 89 (1981). Further, the law reflects that a named plaintiff in a collective action certainly has an interest in what current and former employees are being told about the claims and what they are being required to sign to the extent it affects this FLSA claim. In fact, as discussed above, "[c]ourts exercising their authority under Rule 23(d) have invalidated communications made by a defendant to putative class members before class certification." Doe 1 v. Swift Transportation Co., Inc. 2017 WL 735376, *3 (D. Ariz. Feb. 24, 2017).

### B. Misleading Communications

The Court finds that Defendant's communications with its employees after the filing of the FLSA claim are misleading. As discussed in the hearing, while the May 25, 2018 email was not terribly misleading, it did omit some important details about the Plaintiff's action. Plus, while the email promised the Company would never retaliate against anyone bringing claims against the company in good faith, one could reasonably infer from the email that the Company believes the Plaintiff's claim were not made in good faith. Thus, one is left to wonder about possible retaliation. However, it is the June 11, 2018 email, when viewed in light of the Waiver and Release, that is misleading and improper and causes the most concern.

Employees have a "right . . . to make an informed choice as to whether to participate in [an] FLSA collective action." Billingsley, 560 Fed. Appx. at 922. In the present case, the "Waiver and Release" form distributed by Defendant to putative class members purports to have Defendant's current employees "waive [their] right to participate in an FLSA collective action or to bring an individual action under the FLSA" without informing the putative collective class members of the pending collective action, the claims asserted against the Defendant, and the damages requested. The Waiver and Release, even when viewed with the emails, fails to provide the employees with enough information "to make an informed decision regarding waiver of their rights." Gonzalez v. Preferred Freezer Services LBF, LLC, 2012 WL 4466605, at *1 (C.D. Cal. 2012). See also Griffin v. Aldi, Inc., 2017 WL 1957021, at *5 (N.D.N.Y. May 11, 2017); Marino v. CACafe, Inc., 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) ("Because the Court finds the releases here were obtained by deceptive omissions of material information [namely, the existence of the precertification class action], the Court also finds that the releases are invalid."); O'Connor v. Uber Techs., Inc., 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014)

("Courts have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action [constitutes] misleading communications which the court may limit." (collecting cases)).

While the Defendant correctly states that the Waiver and Release informed employees of their right to consult independent counsel, it is unlikely many did so given the time table allowed. Furthermore, the Court also finds that the communication is improper because it discourages potential plaintiffs from joining the suit or chills participation in the collective action. Mueller v. Chesapeake Seafood House Associates, LLC, 2018 WL 1898557, *8 (D. Md. April 20, 2018) ("the timing of a party's communication to potential class members, especially when the communication occurs prior to class certification, may render that communication improper.").

Therefore, in an effort to alleviate the misleading and coercive communications, the Court will order the Defendant to send a corrective email, which is attached hereto, to all employees who received the previous emails. **This corrective email shall be sent on or before June 21, 2018, by 3:00 pm, CDT. The Defendant shall file a certification on June 22, 2018, confirming compliance with this Order.**

The Court will not enjoin the Defendant from paying the compensation offered to those employees that executed the Waiver and Release. However, as outlined in the corrective email, the acceptance of compensation, and the execution of the Waiver and Release, will not prevent any employee from joining this collective action if it is certified.

Additionally, the Company is prohibited from issuing any further company-wide communications pertaining to this action without prior approval of the Court. Finally, in considering the Court's obligation to tailor its order in the least restrictive manner, the Court

denies the Plaintiff's motion to prevent any future contact by Defendant with putative class members. Defendant may continue to conduct fact-finding investigations with its current employees in an effort to address the current motion for conditional certification and its defense of the action. Additionally, this Order is in no way intended to interfere with the Defendant's ability to communicate with its employees about other business matters.

### C. Other Requests

The Court denies Plaintiff's request for expedited briefing with respect to the conditional certification motion currently pending. The Court likewise denies Plaintiff's motion for attorney's fees for bringing this motion. Finally, the Court grants Plaintiff's motion to compel Defendant to provide a list of all employees who have executed the Waiver and Release.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Plaintiff's motion [DN 9] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that:

1. The Defendant shall send the corrective email which is attached hereto and marked as Exhibit A to all employees who received the prior emails on or before **June 21, 2018, by 3:00 pm, CDT. The Defendant shall file a certification on June 22, 2018, confirming compliance with this Order.**

2. The Company is prohibited from issuing any further company-wide communications pertaining to this action without prior approval of the Court.

3. The Court denies Plaintiff's request for expedited briefing with respect to the conditional certification motion currently pending.

4. The Court denies Plaintiff's motion for attorney's fees.

5. The Court grants Plaintiff's motion to compel Defendant to provide a list of all employees who have executed the Waiver and Release. **On or before July 20, 2018, the Defendant shall provide this information to Plaintiff's counsel.**

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 20, 2018

Exhibit A

As you are aware there is a pending case, *Brittany Rogers v. The WEBstaurant Store, Inc.* Civil Action No. 4:18CV-00074-JHM, in the United States District Court for the Western District of Kentucky.  A hearing was held this morning in the case, and the Court expressed concerns regarding our prior communication with you concerning the case.   Therefore, the Court has ordered that I send you this communication in an effort to alleviate the Court's concerns.  The Court has instructed me to advise you of the following:

First, Ms. Rogers, on behalf of herself and all others similarly-situated, filed her case pursuant to the Fair Labor Standards Act (FLSA) against The WEBstaurant Store, Inc. alleging that the Company failed to pay overtime wages to customer support representatives and other salaried employees who worked in excess of forty hours per work week.  Ms. Rogers seeks the following remedies in her action against the Company: (1) compensation for all time worked in excess of forty hours per week; (2) unpaid overtime going back three years; (3) and an equal amount in liquidated damages, if the Company is found to have willfully violated the FLSA; and (4) attorney's fees.  As I stated in my earlier email, the Company denies Ms. Rogers allegations and plans to defend against the claims made by her in the lawsuit.

Second, Ms. Rogers is asking this Court to conditionally certify a collective action under the Fair Labor Standards Act.  If Ms. Rogers' lawsuit is certified as a collective action by the Court, you will be notified by the Court of your opportunity to join the action.

Third, the Court will allow you to join the collective action even if you have recently executed a Waiver and Release and received compensation offered by the Company.  The Court will allow you to do so because it has a concern that you may have executed that Waiver and Release without full knowledge of all the facts.

And finally, the Company acknowledges it is your right to join in the collective action if you choose, and despite the fact that the Company disagrees with the claims made by Ms. Rogers, the Company will not retaliate against you in any way should you choose to join in the action, even if you have signed the Waiver and Release and received the payment offered by the Company.