UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:18-CV-00074-JHM

**BRITTANY ROGERS, on Behalf of**                        **PLAINTIFF**
**Herself and All Others**
**Similarly-situated**

**V.**

**THE WEBSTAURANT, INC.**                                           **DEFENDANT**

## MEMORANDUM AND OPINION ORDER

This matter is before the Court on Plaintiff's Motion for Conditional Certification, Expedited Discovery, and Court-Authorized Notice [DN 8]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Plaintiff, Brittany Rogers, filed a civil action against Defendant, The Webstaurant Store, Inc. ("Webstaurant"), alleging that Webstaurant willfully engaged in the practice of not recording employees' time for work performed and failed to compensate Rogers and others similarly situated with appropriate payment for such work in excess of forty hours in a work week in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Complaint ¶1.) Rogers was employed by Webstaurant as a Consumer Solutions Specialist at the customer support facility in Madisonville, Kentucky from April 13, 2015 to December 19, 2017.

Rogers now moves the Court to conditionally certify a class of current and former Consumer Solutions Specialists, Logistics Liaisons, and other non-exempt employees if the employee was scheduled to work shifts totaling forty hours per workweek but during said workweek(s) did not use a time clock to track actual hours worked. Rogers also moves the Court

1

to approve notice to advise putative plaintiffs of their rights under the FLSA, and to furnish them an opportunity to opt-in to this action. Webstaurant opposes the conditional certification and certain aspects of Roger's proposed notice (Def.'s Resp. in Opp'n to Pl.'s Mot. for Conditional Class Certification [DN 36]).

During the pendency of this motion, Rogers filed a Motion for a Temporary Restraining Order to prohibit Webstaurant from communicating with putative class members about the instant litigation and attempting to settle such claims [DN 9]. Two emails from Webstaurant's President Dave Groff and the distribution of a "Waiver and Release" form to specific employees prompted this motion [DN 9-3, 9-6, 9-7]. One email was sent on May 25, 2018 and informed the recipients of Rogers' lawsuit [DN 9-3]. The second email, sent July 11, 2018, told the recipients that Webstaurant wanted to guarantee that no employee was missing owed overtime pay and so the company would be paying those employees a specified amount of overtime pay [DN 9-6]. The final communication came the following day, June 12, 2018, in the form of a "Waiver and Release" document, purporting to release Webstaurant from any potential FLSA liability [DN 9-7]. On June 20, 2018, this Court issued an Order finding that Webstaurant's communications with its employees were misleading and ordering Webstaurant's President to send a clarifying email to the same recipients [DN 15].

## II. STANDARD OF REVIEW

The Fair Labor Standards Act ("FLSA") mandates that "'employers pay a federally-established minimum wage, as well as overtime, to certain types of employees.'" *Tassy v. Lindsay Entertainment Enterprises, Inc.*, 2017 WL 938326, at *2 (W.D. Ky. Mar. 9, 2017) (quoting *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 605 (6th Cir. 2013) (citing 29 U.S.C. §§ 206(a), 207(a)). To enforce that mandate, the FLSA provides that an employee may

bring a claim "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). A collective action under the FLSA permits similarly situated employees to "opt-in" to the action, unlike the opt-out approach typically utilized under Federal Rule of Civil Procedure 23. "An opt-in action under § 216(b) prohibits any person from becoming a party plaintiff in the collective action unless he or she files a written consent with the Court; therefore, these similarly situated employees must be notified of the lawsuit." *Ross v. Jack Rabbit Servs., LLC*, 2014 WL 2219236, at *2 (W.D. Ky. May 29, 2014) (citing *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).

The FLSA does not itself define "similarly situated," but courts in this Circuit generally apply a two-stage process "to determine whether employees are 'similarly situated' for purposes of maintaining a collective action against their employer." *Tassy*, 2017 WL 938326, at *2. In the first stage, "which takes place at the beginning of discovery, the Court must determine whether to conditionally certify the collective action and authorize the distribution of notice to putative class members." *Id.* (citing *Comer*, 454 F.3d at 546–47). Because conditional certification decisions generally are made prior to discovery, "a plaintiff's evidentiary burden is not a heavy one." *Ross*, 2014 WL 2219236, at *2. "Conditional certification requires only a modest factual showing that the putative opt-plaintiffs are 'similarly situated' to the named plaintiff." *Tassy*, 2017 WL 938326, at *2 (citing *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012)). The similarly situated standard does not require that the plaintiff's position be identical to the positions held by the putative class members. *Green v. Platinum Restaurants Mid-America, LLC*, 2015 WL 6454856, at *1 (W.D. Ky. Oct. 26, 2015) (citing *Hathaway v. Masonry*, 2012 WL 1252569, at *2 (W.D. Ky. Apr. 13, 2012)). "At this stage, courts generally consider the pleadings and any affidavits which have been submitted." *Id.* The determination of conditional certification

"is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (internal quotation omitted)). However, the initial certification is "conditional and by no means final." *Id.* at 546.

The second stage occurs "after 'all of the opt-in forms have been received and discovery has concluded.'" *Id.* (citation omitted). "In making its final-certification decision, the Court scrutinizes a number of factors, such as 'the factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *Tassy*, 2017 WL 938326, at *2 (quoting *O'Brien v. Ed Donnelly Enterprises*, 575 F.3d 567, 584 (6th Cir. 2009) (alterations in original) (internal quotations omitted)). "Regardless of the stage, the lead plaintiff bears the burden of 'showing that the opt-in plaintiffs are similarly situated.'" *Tassy*, 2017 WL 938326, at *2 (citing Wright et al., *supra*, § 1807, at 476 n.21).

### III. DISCUSSION

#### A. Conditional Certification

Plaintiff seeks to certify a class of "all current and former employees of the WEBstaurant Store, Inc. who were employed as . . . (A) a Customer Solutions Specialist or (B) a Logistics Liaison or (C) in any other non-exempt position, if in such non-exempt position such employee was scheduled to work shifts totaling forty hours per workweek but during said workweek(s) did not use a time clock to track actual hours worked." [DN 8 at 1]. The Court finds that Rogers provided sufficient factual support to merit conditional certification of a collective action for current and former employees of Webstaurant who were employed as Customer Solutions Specialists and Logistics Liaisons. The Court also finds that Rogers provided sufficient factual

4

support to merit conditional certification of a collective action regarding employees in any other non-exempt position who received the June 11 email or the "Waiver and Release" form from Webstaurant. Regarding other employees in "any other non-exempt position," the Court finds that Rogers has provided insufficient factual support to merit conditional certification for such a catch-all class.

1. **Customer Solutions Specialists**

Rogers seeks to conditionally certify a class of all Customer Solutions Specialists at Webstaurant's facilities. To do so, Rogers and four others submitted declarations stating that Webstaurant's Consumer Solutions Specialists did the same type of work and were, for wage and hour purposes, treated similarly. (Rogers Decl. ¶¶ 4, 6, 13–14, 17); (Aguilera Decl. ¶¶ 3, 5–6, 15–16); (Smart Decl. ¶¶ 6–7, 16–17); (Timm Decl. ¶¶ 6, 8–9, 18–19); (Gibson Decl. ¶¶ 6, 8–9, 18–19). According to the declarations, the five Customer Solutions Specialists regularly worked additional time in excess of the forty-hour workweek, either before or after their shifts, or both and were not paid for their overtime work in violation of FLSA. (Rogers Decl. ¶¶ 7, 9–10, 13); (Aguilera Decl. ¶¶ 9, 11–12, 15); (Smart Decl. ¶¶ 10, 12–13, 16); (Timm Decl. ¶¶ 12, 14–15, 18); (Gibson Decl. ¶¶ 12, 14–15, 18).

Webstaurant claims Rogers failed to prove that she is similarly situated to Customer Solutions Specialists in Webstaurant's other facilities. However, Rogers provided her own declaration along with declarations from four other Customer Solutions Specialists employed in each of Webstaurant's facilities—located in Kentucky, Nevada, Georgia, and Pennsylvania. (Rogers Decl. ¶ 3); (Gibson Decl. ¶ 3); (Aguilera Decl. ¶ 2); (Smart Decl. ¶ 2); (Timm Decl. ¶ 3). The declarations assert that Customer Solutions Specialists at each facility were treated the same for scheduling and wage purposes, worked in excess of the scheduled forty-hour workweek, and

were not paid overtime wages. (Rogers Decl. ¶¶ 6–7, 9, 13–15); (Aguilera Decl. ¶¶ 5, 9, 11–12, 15–17, 21); (Smart Decl. ¶¶ 6, 10, 12–13, 16–18); (Timm Decl. ¶¶ 8, 12, 14–15, 18–20); (Gibson Decl. ¶¶ 8, 12, 14–15, 18–20). Webstaurant claims that Rogers is required to offer "individualized proof as to the pattern of practice in effect at each respective facility" [DN 36 at 9]. However, that degree of proof is not necessary at the initial stage. Rather, "[b]ecause conditional certification decisions generally are made prior to discovery, 'a plaintiff's evidentiary burden is not a heavy one.'" *Johnston v. J&B Mechanical, LLC*, 2017 WL 3841654, at *2 (W.D. Ky. Sept. 1, 2017) (quoting *Ross v. Jack Rabbit Servs., LLC*, 2014 WL 2219236, at *2 (W.D. Ky. May 29, 2014)). Rogers has offered sufficient evidence by way of the submitted declarations to satisfy her burden that Customer Solutions Specialists in each of Webstaurant's facilities are similarly situated and were the victims of a commonly-applied, unlawful policy.

**2. Logistics Liaisons**

Rogers, through the declaration of Sarah Koch, offers evidence that Logistics Liaison employees should also be conditionally certified. Sarah Koch is a currently employed Logistics Liaison at Webstaurant's Pennsylvania facility. (Koch Decl. ¶ 7). Her declaration asserts that the work of Logistics Liaisons is very similar to that of Customer Solutions Specialists. (Koch Decl. ¶ 2). Koch bases this contention on her prior employment as a Customer Solutions Specialist, her conversations with Customer Solutions Specialists, and her husband's prior employment as a Customer Solutions Specialist. (Koch Decl. ¶¶ 2, 8–9, 11–12). Specifically, the declaration states that Customer Solutions Specialists and Logistics Liaisons perform similar job duties—the former engages with customers while the latter engages with suppliers as well as customers. (Koch Decl. ¶ 12). Further, Koch states that Webstaurant treated both Logistic Liaisons and Customer Solutions Specialists as non-exempt from the requirements of the FLSA. (Koch Decl. ¶ 16). The

declaration asserts that Customer Solutions Specialists and Logistics Liaisons were treated the same for purposes of pay practices and hours—specifically, both are treated as "office personnel" pursuant to the Employee Handbook. (Koch Decl. ¶¶ 14–15, 17–18). Further, Koch claims that she and other Logistics Liaisons frequently worked in excess of forty hours per week but that Webstaurant knowingly failed to pay the correct amount of overtime wages. (Koch Decl. ¶¶ 19–21, 23, 26–27).

As stated above, "[a]uthorization of notice requires only a modest factual showing that the plaintiff's position is similar, not identical, to the positions held by the putative class members." *Green*, 2015 WL 6454856, at *1 (citing *Hathaway*, 2012 WL 1252569, at *2). Through the Koch declaration, Rogers has made the requisite "modest factual showing" that her position is similar to that of Logistics Liaisons. *Green*, 2015 WL 6454856, at *1 (citing *Hathaway*, 2012 WL 1252569, at *2).

### 3. Any Other Non-Exempt Employee

Concerning proposed class (C), Rogers claims that communications by Webstaurant, concerning the instant litigation, "constitute admissions by Defendant . . . that there is a class of persons similarly-situated to Plaintiff, and thus support granting the motion" (Supp. To Pl.'s Mot. For Conditional Certification [DN 21 at 1]). Rogers refers to the June 11 email as well as the "Waiver and Release" document provided to many Webstaurant employees [DN 21]. Rogers points to evidence, albeit actions taken by Webstaurant, which persuades the Court that she has also satisfied her burden with respect to a specific subset of employees—those individuals who received communication(s) directly from Webstaurant concerning the instant litigation.

In the June 11 communication, Webstaurant's President stated that the recipients previously "were paid for 40 hours per week" and proceeded to detail a plan to pay employees for

any previously unpaid overtime hours.  Shortly thereafter, a "Waiver and Release" form was distributed.  Rogers claims that this "form implicitly acknowledges that the recipients are entitled to participate in this action, as it requests employees 'waive [their] right to participate in an FLSA collective action'" [DN 21, DN 9-7].  Webstaurant appears to claim that the June 11 communication was part of an effort to prevent employees from being blindsided by potential outreach from Roger's counsel (Def.'s Resp. in Opp'n to Pl.'s Mot. for Conditional Certification [DN 36]).  Webstaurant does not address Roger's contention about the "Waiver and Release" document.  Rogers offers no other evidence concerning category (C) employees. At this initial stage of certification, the Court is persuaded that Rogers meets her burden as to employees who received the June 11, 2018 email from Webstaurant's President and/or the "Waiver and Release" document distributed thereafter.  However, the Court finds that Rogers failed to meet her burden to certify the entire category (C) by failing to offer any evidence which suggests that these additional, undefined employees are similarly situated to herself.

    **4. Conclusion**

Webstaurant asserts that if the class were conditionally certified, "the claims could only be resolved by conducting individualized fact-intensive trials to reconstruct each employee or former employee's work history and compensation" [DN 36 at 9–10].  While perhaps true, that is an argument more appropriately raised at the second stage, "after all of the opt-in forms have been received and discovery has concluded." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citation omitted).

At a minimum, Rogers has established the modest factual showing necessary to meet the burden under the fairly lenient standard to establish a similarly situated class under the FLSA. *Comer*, 454 F.3d at 546.  Accordingly, the Court finds the requisite similarity to conditionally

certify a class consisting of Customer Solutions Specialists, Logistics Liaisons, and any other employee in any non-exempt position who received the specified communications.

## B. Proposed Notice

Both Rogers and Webstaurant have submitted proposed notices along with the pleadings [DN 21-1, 21-2, 36-1]. Having determined that conditional certification is warranted, the Court must determine if the proposed notice is fair and accurate to properly inform prospective plaintiffs of the action. *Green v. Platinum Restaurants Mid-America, LLC*, 2015 WL 6454856, at *3 (W.D. Ky. Oct. 26, 2015). "A class action depends 'on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id.* (citation omitted). "'[A] district court has discretion to facilitate notice to potential plaintiffs.'" *Id.* (quoting *Bassett v. Tenn. Valley Auth.*, 2010 WL 3092251, at *2–3 (W.D. Ky. Aug. 5, 2010) (citation omitted)).

As a threshold matter, Webstaurant argues that Roger's request for conditional certification should be denied, but that if the Court does conditionally certify a class, the limitations period should be two years [DN 36-1]. Rogers, on the other hand, requests a conditional certification with a limitations period of three years [DN 8]. "The FLSA establishes a general two-year statute of limitations, but a cause of action arising out of a 'willful' violation of the act increases the statute of limitations to three years." *Smith v. Generations Healthcare Servs., LLC*, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (citing 29 U.S.C. § 255(a)). "A violation of the FLSA is 'willful' when an employer either 'kn[ows] or show[s] reckless disregard as to whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988)). Here, Rogers alleges that Webstaurant willfully chose to ignore, and not pay for, overtime work performed by both her and others [DN 8-7]. Additionally, Rogers offers her own declaration,

9

along with four others, to support this claim. (Rogers Decl. ¶¶ 7, 11, 14–15); (Aguilera Decl. ¶¶ 9, 13, 16–17); (Smart Decl. ¶¶ 10, 14, 17–18); (Timm Decl. ¶¶ 12, 16, 19–20); (Gibson Decl. ¶¶ 12, 16, 19–20). "Whether Defendant['s] alleged FLSA violations are 'willful' is a question better suited for a later stage of the litigation." *Id.* (citing *Stanley v. Turner Oil & Gas Props., Inc.*, 2017 WL 127481, at *9 (S.D. Ohio Jan. 13, 2017); *College v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 735 (S.D. Ohio 2016)); *see also Ross v. Jack Rabbit Servs., LLC*, 2014 WL 2219236, at *4 (W.D. Ky. May 29, 2014) (using a three-year statute of limitations period for willful violations at the notice stage). That being the case, the limitations period for purposes of the notice will be three years.

Additionally, Rogers argues that additional language is needed in the notice to be sent to proposed class members who received Webstaurant's communications [DN 21]. Rogers bases this argument on the Court's June 20 finding. Specifically, Rogers suggests adding sixteen paragraphs explaining to the recipient of the notice the ways in which Webstaurant's prior communications were misleading [DN 21-1]. Consequently, Rogers proposes that two notices be sent—one to those individuals who received communication from Webstaurant with added language regarding the misleading communications and their ability to join the lawsuit and one to those individuals who did not receive communication from Webstaurant without added language.

Rogers cites to *Mueller v. Chesapeake Seafood House Associates, LLC* as support for this proposal. However, that case is distinguishable. In *Mueller*, the court authorized a particularized notice to be sent to a subset of employees who received communications from the Defendant that the court deemed confusing. *Mueller v. Chesapeake Seafood House Associates, LLC*, 2018 WL 1898557, at *8 (D. Md. April 20, 2018). The remedial notice was necessary because no other corrective measure had been taken by that court prior to the distribution of the original notice.

10

Here, the Court ordered Webstaurant to remedy the prior misleading and coercive communications by way of a corrective email which was sent by Webstaurant President Dave Groff on June 21, 2018 [DN 15, 17]. Unlike in *Mueller*, the improper communication by Webstaurant has been corrected prior to the mailing of a notice. Consequently, only one notice will be sent to the certified class. The notice will include the following language, as consistent with the Court's June 20, 2018 order: "The Court will allow you to join the collective action even if you executed a Waiver and Release or received compensation offered by The WEBstaurant Store, Inc" [DN 15].

Further, Rogers suggests that because Webstaurant's President communicated with employees through email, any notice should be sent by email in addition to traditional mail. Rogers offers no support for this request. Rogers also proposes that the notice should be individually addressed to the recipient because the distributed "Waiver and Release" was individualized. Again, Rogers puts forward no support for this request. As such, both requests are denied.

Concerning the remainder of the parties' disagreements to the proposed notice, the Court has resolved the differences in the attached Notice.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff, Brittany Rogers, to conditionally certify a collective action and to facilitate notice to collective plaintiffs is **GRANTED** as to Customer Solutions Specialists, Logistics Liaisons, and any other non-exempt employee who received Webstaurant's communications and **DENIED** as to any other non-exempt employee;

**IT IS FURTHER ORDERED** that within fifteen (15) days of the date of entry of this order, Defendant shall provide to Plaintiff the contact information for all putative class members, including their names, last known addresses, and last known telephone numbers;

**IT IS FURTHER ORDERED** that within fifteen (15) days of Plaintiff's receipt of the putative class members' contact information, Plaintiff shall send the notice and consent form by first-class mail to all potential plaintiffs;

**IT IS FURTHER ORDERED** that all members of the Notice Group shall be provided sixty (60) days from the date of mailing the notice and consent form to opt-in to this lawsuit;

**IT IS FURTHER ORDERED** that all consent forms will be deemed to have been filed with the Court the date they are stamped as received, and Plaintiff's counsel shall file them electronically on a weekly basis, at a minimum;

**IT IS FURTHER ORDERED** that the parties shall file a joint status report, detailing their compliance with this Order, within fifteen (15) days of the close of the opt-in period.

*[Signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

September 25, 2018

<b>NOTICE OF COLLECTIVE ACTION LAWSUIT</b>

TO:     All current and former employees of The WEBstaurant Store, Inc. who were employed as a "Customer Solutions Specialist" or "Logistics Liaison" at any time in the three (3) year period prior to filing the attached Consent form or who received the June 11, 2018 email from Dave Groff and/or the Waiver and Release document provided by The WEBstaurant Store, Inc.

<b>THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS;<br>PLEASE READ THE ENTIRE NOTICE CAREFULLY.</b>

### I.     Introduction

The purpose of this Notice is to inform you of the existence of a collective action lawsuit brought against The WEBstaurant Store, Inc. in the United States District Court for the Western District of Kentucky pursuant to the Fair Labor Standards Act ("FLSA") which may affect the rights of any person employed or formerly employed by The WEBstaurant Store, Inc., who worked in excess of forty (40) hours a week but was not paid the correct amount in overtime wages.  This Notice serves to inform you of the rights that you may have in connection with the lawsuit and to instruct you how to join the lawsuit should you decide to do so.  **The Court will allow you to join the collective action even if you recently executed a Waiver and Release or received compensation offered by The WEBstaurant Store, Inc.**

This Notice is for the purpose of determining the identity of those persons who want to be involved in this lawsuit.  Although the Court has authorized notice to be sent, the Court has taken no position regarding the merits of the case.

### II.     Description of Lawsuit

Brittany Rogers, who was formerly employed as a Customer Solutions Specialist by The WEBstaurant Store, Inc. from 2015 through December 19, 2017, filed this collective action lawsuit in the United States District Court for the Western District of Kentucky on May 14, 2018.  The proceedings in this collective action lawsuit are being conducted in the Owensboro Division under Cause No. 4:18-CV-74-JHM.

Brittany Rogers, Plaintiff, contends that The WEBstaurant Store, Inc., violated the Fair Labor Standards Act ("FLSA") by failing to properly compensate Customer Solutions Specialists, Logistics Liaisons, and other employees who received communications from The WEBstaurant Store, Inc. who worked in excess of forty (40) hours per workweek but were not paid the correct amount of overtime wages.  The Complaint alleges such employees were required to work in excess of forty (40) hours per week and they were non-exempt such that overtime pay was required by law, but that The WEBstaurant Store, Inc. willfully and knowingly failed to pay the correct amount of overtime wages.  Plaintiff Brittany Rogers contends that the class will be successful and granted final certification.

The WEBstaurant Store, Inc. is represented by Randall S. Strause and Courtney L. Graham, STRAUSE LAW GROUP, PLLC, 804 Stone Creek Pkwy, Ste. One, Louisville, Kentucky, 40223.

The WEBstaurant Store, Inc. denies these allegations, denies that it owes any compensation and asserts that it paid these employees all compensation required by law.  The WEBstaurant Store, Inc. further contends that, while this lawsuit may temporarily be certified as a collective action, it should be decertified after the parties exchange information in the litigation discovery process.

If the alleged violations of the FLSA are proved true, the Plaintiffs seek to recover earned but unpaid overtime wages, liquidated damages, interest, attorney's fees, and costs of the litigation. No money can be collected on your behalf and you will not be represented in this case unless you decide to "opt in" as a collective member in this action. Because the decision to opt in will also impose upon you certain obligations, you should read this entire Notice carefully before making your decision on whether or not to "opt in."

### III. Rights and Obligations of Additional Plaintiffs

#### A. Right to be Represented

If you choose to become an additional party Plaintiff to this collective action lawsuit and choose to be presented by the collective action representative/Plaintiff, Brittany Rogers, you will be represented by Mark N. Foster of Law Office of Mark N. Foster, PLLC. This attorney will represent you in all matters in the case. The address, telephone number, and email address for this attorney will appear later in this Notice, so that you will be able to contact him.

If you choose to join in the collective action lawsuit and be represented by this attorney, he will represent you on a contingent fee basis as part of any attorney's fees awarded by the Court. If this action is unsuccessful in recovering monetary damages for you, you will not be charged any attorney's fees by your representative. You may however be liable for a portion of certain costs incurred by The WEBstaurant Store, Inc. if the litigation is unsuccessful.

#### B. Other Rights and Obligations

i. You may be asked to provide information regarding your compensation and hours worked while employed by The WEBstaurant Store, Inc., as well as other information relating to your claims. You may also be asked or required to appear to give deposition and/or trial testimony in this case.
ii. If you become a member of the collective action lawsuit and no recovery is obtained, you will be bound by that result and will not be able to file your own lawsuit concerning these matters in the future.
iii. By joining the lawsuit you designate the collective action representative/Plaintiff (Brittany Rogers) as your agent to make decisions concerning the litigation and the manner and method of conducting this litigation. These decisions and agreements made and entered into by the collective action representative/Plaintiff, Brittany Rogers, will be binding on you. You will be entitled to notice of any Court ruling in this matter, and you will be entitled to an opportunity to be heard respecting any proposed settlement or dismissal of the collective claims. For this reason, you will be required to keep your counsel advised of your current address and telephone numbers.

### IV. Election to Opt In to this Lawsuit

If, during the last three years, you worked for The WEBstaurant Store, Inc. as a "Customer Solutions Specialist," a "Logistics Liaison," or as another category of employee who received the June 11, 2018 email from President Dave Groff and/or the "Waiver and Release" document and believe you failed to correctly receive appropriate amounts for overtime pay, you have the right to choose whether or not to participate in this collective action lawsuit.

You should carefully review the rights and obligations of members of the collective action lawsuit set out above, including the terms of compensation of counsel and the binding effect of any judgment or settlement before making your choice.

**If you wish to be included**, you must complete the enclosed **"Notice of Consent."** The completed form should be returned to the attorneys for Plaintiff listed below for filing with the Court.

**THE CONSENT FORM MUST BE SIGNED AND MAILED AND DELIVERED SO AS TO ALLOW TIME FOR IT TO BE FILED WITH THE COURT WITHIN SIXTY (60) DAYS AFTER THE MAILING OR DISTRIBUTION OF THIS NOTICE.**

**If you do not wish to be included in this lawsuit, you do not have to do anything.** If you do nothing and do not opt in, you will be permitted to pursue your own claim or lawsuit at your own cost and with your own counsel.

### V.     No Opinion Expressed as to Merits of the Case

The Court has directed that this Notice be sent to you because it is believed that you may be affected by the litigation and outcome of the case and for the purpose of determining the identity of those persons who wish to be involved in this case. The Court has not yet ruled on the merits of any of the claims or defenses raised by either side, and this Notice should not be interpreted as an indication of how the Court may rule in the future. The Court does not express any opinion about whether you should or should not join the collective action lawsuit.

### VI.     Additional Information

A. The documents filed in this case are a matter of public record, filed with the Clerk of the Court for the United States District Court for the Western District of Kentucky, Owensboro Division. You may review the case filings at the Clerk's office located at 423 Federica Street, Suite 126, Owensboro, Kentucky 42301-3013; (270) 869-4400.
B. Any questions that you may have concerning this Notice, and any changes to your address or telephone number, should not be directed to the Court, but should be provided to the legal representative of your choosing. Additionally, if you decide to become a member of the collective action, and you wish to communicate with the legal representative for the Plaintiff in this action, you may do so in writing, by email, or by telephone to:

> LAW OFFICE OF MARK N. FOSTER, PLLC
> 113 E. Center St., Ste. B
> P.O. Box 869
> Madisonville, KY 42431
> Telephone: (270) 213-1303
> Facsimile: (270) 821-3158
> Email: MFoster@MarkNFoster

**If you do decide to become a member of the collective action lawsuit, please remember that the Court has set a time for your submission for the opt-in consent form.  You will not be included in the collective action lawsuit unless you return the enclosed Notice of Consent to be Represented in time for it to be filed with the Court no later than sixty (60) days after the mailing or distribution of this Notice.**

The date of mailing or distribution of this Notice is _____.

### VII.     No Retaliation Against You Is Permitted

Federal law prohibits The WEBstaurant Store, Inc. from terminating your employment or in any other manner discriminating or retaliating against you because you have exercised your rights under the Fair Labor Standards Act by joining this lawsuit.  The WEBstaurant Store, Inc., has confirmed that it will not take any retaliatory measures against any employees who join this lawsuit.