UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:18-CV-00074-JHM

BRITTANY ROGERS, on Behalf of                          PLAINTIFFS
Herself and All Others
Similarly-situated

V.

THE WEBSTAURANT, INC.                                  DEFENDANT

MEMORANDUM AND OPINION ORDER

This matter is before the Court on Plaintiffs' Motion for the Issuance of a Supplemental Notice and to Extend or Re-Open the Joining Period.  [DN 69].  Fully briefed, this matter is ripe for decision.  For the following reason, the Plaintiffs' Motion is **DENIED**.

I. BACKGROUND

On May 15, 2018, Plaintiff, Brittany Rogers, filed a civil action against Defendant, The Webstaurant Store, Inc. ("Webstaurant"), alleging that Webstaurant willfully engaged in the practice of not recording employees' time for work performed and failed to compensate Rogers and others similarly situated with appropriate payment for such work in excess of forty hours in a work week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Complaint ¶ 1.)  This Court granted Plaintiffs' Motion for Conditional Certification on September 26, 2018 and set forth a Court-authorized notice.  [DN 44].  Rogers' counsel sent the Court-authorized notice to the putative class by both certified mail and first-class mail, despite the order requiring delivery via only first-class mail.  [DN 79-3].

The notice informed the putative class of the pending collective action and outlined Plaintiffs' claims under the FLSA.  [DN 44].  Further, the notice made clear that those employees of Webstaurant who executed a Waiver and Release form provided by Webstaurant were also

1

permitted to join the action.  [*Id.*].  Importantly, the notice also made clear that Webstaurant is prohibited by federal law from retaliating against a putative class member for exercising his or her right to join the litigation and that Webstaurant "confirmed that it will not take any retaliatory measures against any employees who join this lawsuit."  [*Id.*].

On November 29, 2018, Webstaurant filed an emergency motion for a temporary restraining order to prohibit Rogers' counsel from engaging in unsolicited communications with putative class members outside of the Court's notice.  [DN 58].  Therein, Webstaurant argued that Rogers' counsel was sending improper text messages to members of the putative class in Pennsylvania seeking face-to-face meetings.  [*Id.* at 1–2].  As such, Webstaurant argued that the messages "pose a significant likelihood of misleading or coercing putative class members in sessions designed to recruit more individuals to join the action" and can further "be classified as an improper follow-up solicitation, which arguably breaches ethical and professional obligations and guidelines . . . ."  [*Id.* at 2].  On December 7, 2018, the Court denied Webstaurant's motion for failure to submit evidence that the communications were coercive, misleading, or abusive.  [DN 67].  Additionally, the Court noted that it was not persuaded that the communications constituted unauthorized reminders or a usurpation of the Court's authority to guide the notice process.  [*Id.*].

Rogers filed the instant motion on December 12, 2018, days before the conclusion of the notice period.  [DN 69].  In the motion, Rogers argues that Webstaurant's behavior in the weeks following distribution of the original notice warrants the issuance of a supplemental notice along with a new or extended notice period.  [*Id.* at 1].  Specifically, Rogers accuses Webstaurant of engaging "in a campaign of deception and intimidation directed at preventing its current employees from joining this collective action, creating an environment of fear of retaliation amongst its current employees."  [*Id.*].  Webstaurant responded that the motion was based on "unsubstantiated and unspecified" fears of retaliation by unidentified individuals and that it was motivated by the low

2

number of opt-ins received since the notice issued.  [DN 74].  The opt-in period is now closed and there are presently twenty-five members of this collective action.

The evidence currently before the Court as to Webstaurant's intimidation of employees is twofold.  The first pieces of evidence are competing declarations submitted by both parties related to an allegedly intimidation-ridden conversation—Plaintiffs submitted the declaration of Elsa Stephens, a former Customer Solutions Specialist, and Defendant submitted the declaration of Cleo Silva, a current Customer Solutions Team Leader.  [DN 63-1, 74-2].  The second evidentiary offering is a declaration and accompanying unauthenticated text messages from a former employee who opted in to this collective action, Matthew Koch.  [DN 63-5].  The motion will be resolved based on these submissions.

## II. STANDARD OF REVIEW

"The purpose of notice is simply to inform potential class members of their rights.  Once they receive that information, it is their responsibility to act as they see fit."  *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (internal quotation marks omitted).  The Court may supervise the notice process, but in doing so "must take care to avoid even the appearance of judicial endorsement of the merits of the action."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  To avoid any appearance of judicial endorsement, courts narrowly tailor notice to be given in specific mediums, with prescribed language, and distributed only to the extent necessary to inform the putative class.  *See Tassy v. Lindsay Entm't Enters.*, No. 3:16-CV-00077, 2017 WL 938326, at *5 (W.D. Ky. Mar. 9, 2017) (discussing how duplicative notices pose a risk of encouraging absent class members to join the suit or showing approval of the suit on its merits, as well as the presumption of adequacy of first-class mail notice which must be rebutted prior to additional notice).  Further, "[c]ourts generally approve only a single method for notification unless there is a reason to believe that method is ineffective."  *Fenley v. Wood Grp. Mustang, Inc.*, 170 F.

3

Supp. 3d 1063, 1074 (S.D. Ohio 2016) (citing *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012)).

Sixth Circuit cases addressing re-opening or extending the FLSA notice period are scarce. The cases in this circuit and those from other courts nationwide that address the issue, or one similar, tend to disfavor re-opening the notice period unless significant and severe circumstances so warrant. *See Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-1412, 2016 WL 1622015 (M.D. Tenn. Apr. 19, 2016) (re-opening the notice period based in part on "clear evidence" of the employer's attempted retaliation against an employee if he remained a claimant in the lawsuit); *Lewis v. Southeast Commercial. Cleaning, LLC*, No. 14-CV-00003, 2015 WL 5697219 (E.D. La. Sept. 28, 2015) (denying a motion to re-open and extend the opt-in period because plaintiffs failed to identify a single prospective claimant who wished to opt-in but was unable to do so); *Velasque-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448, 2016 WL 7429200 (E.D. N.C. Sept. 30, 2016) (noting that courts may reopen a notice period upon proper showings of misconduct).

### III. DISCUSSION

Despite the vast number of arguments advanced by both parties, the motion before the Court requires resolution of a singular issue—whether the circumstances in this case are severe enough to warrant re-opening the notice period and the issuance of a new, revised notice to the putative class. As previously stated, two pieces of evidence are currently before the Court as to this issue— contradictory declarations concerning a conversation between Customer Solutions Specialists and their Team Leader and a declaration by a former employee with attached unauthenticated text messages. [DN 63-1, 74-2, 63-5]. This showing is insufficient to persuade the Court that Webstaurant engaged in the kind of severe misconduct which would warrant allowing Rogers' to recast the nets through the re-opening of the notice period and the issuance of a supplemental notice.

4

Looking first at the conflicting declarations, Rogers relies on the sworn statement of Ms. Elsa Stephens, a former Customer Solutions Specialist, to support her allegation of misconduct on Webstaurant's behalf.  The declaration states, in part, that Ms. Stephens' team leader overheard her discussing the collective action with a coworker and informed them that Webstaurant could see who joined the lawsuit.  [DN 63-1 ¶ 4–5].  In response, Webstaurant submitted the sworn statement of Ms. Cleo Silva, the team leader alleged to have made that statement.  [DN 74-2].  Ms. Silva's declaration directly contradicts that of Ms. Stephens—Ms. Silva maintains that she "never had any interaction or communication with Ms. Stephens regarding the Notice, joining plaintiffs, or any aspect of the pending litigation."  [*Id.* ¶ 6].  At best, Rogers presents a single instance of Webstaurant's behavior, and, at worst, a fabricated accusation.  In any event, this evidence alone is insufficient to find Webstaurant engaged in the kind of severe misconduct warranting the requested relief.

The Court turns now to the declaration of Matthew Koch, a former Customer Solutions Specialist.  [DN 63-5].  Mr. Koch states that he exchanged text messages with two people who worked at Webstaurant who wanted to join the lawsuit but were afraid they would be retaliated against.  [*Id.* ¶ 3–4].  Attached to his declaration are the relevant text messages with the identifying information redacted.  [*Id.* at 2–8].  Webstaurant responds to this evidence by arguing there is no proof that these messages were sent by Webstaurant employees.  [DN 74 at 2].  However, even if these text messages were sent by employees, it is not evidence of misconduct by Webstaurant.  The messages merely relay a fear of retaliation.  The senders may very well fear retaliation by Webstaurant even in the absence of threats or misconduct.  However, the original notice made clear that federal law prohibited Webstaurant from discriminating or retaliating against opt-in plaintiffs for exercising their rights under the FLSA.  [DN 44]; *see also Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220 (E.D. Mich. 2010) (internal quotation marks omitted) (noting that judicial

notice is intended to inform potential class members of their rights and then they must act as they see fit). Importantly, the Court notes that Rogers did not identify a single prospective claimant from the putative class who wished to opt into the suit but did not do so due to the actual threat of retaliation. [DN 74 at 7–8]. The sheer lack of clear evidence of wrongdoing weighs against granting the requested relief.

Rogers relies heavily on a single case to support this Motion. *See Myers v. Memorial Health Sys. Marietta Mem'l Hosp.*, No. 2:15-CV-2956 (S.D. Ohio April 20, 2017), [DN 9-8]. However, that case is readily distinguishable from the circumstances in the instant case. Aside from the obvious differences in the procedural posture of the *Myers* decision, the employer's coercive tactics and misconduct in that case are far more severe and pronounced than those relied upon by Rogers to support this Motion. Specifically, in *Myers*, there was a "clear record of a likelihood of serious abuses" by the employer. *Id.* at 8. This clear record consisted of the employer contacting new employers of past employees to recommend against hiring those individuals, seeking out specific individuals and coercing them into signing pre-drafted affidavits about the clarity of the work-place policies, and revocation of additional employment offers, among others. *Id.* at 3. The same "clear record of a likelihood of serious abuses" does not exist here. As such, Rogers' reliance on *Myers* is misplaced.

Another consideration weighs against reopening the notice period and issuing a supplemental notice. As previously stated, in facilitating notice to the putative class, the Court should avoid "communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *See Tassy v. Lindsay Entm't Enters.*, No. 3:16-CV-00077, 2017 WL 938326, at *5 (W.D. Ky. Mar. 9, 2017) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 168–69 (1989)). Duplicative notice poses a risk of suggesting both of those things, particularly

in light of the history of this notice period—notice by certified mail and first-class mail as well as direct communications by Rogers' counsel with members of the putative class.

Of course, the allegation of such threats or intimidation by an employer in an FLSA action is a very serious one which requires careful attention, but the evidence presented is insufficient. The Court took care with the issuance of the original notice to make clear to the putative class members that federal law prohibited Webstaurant from discriminating or retaliating against employees who opted in.  [DN 44].  Additionally, the Court's need to avoid even the appearance of judicial endorsement of the merits of the action weighs against granting relief in this case. Accordingly, Rogers' Motion to issue a supplemental notice and re-open or extend the opt-in period is **DENIED**.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for the Issuance of a Supplemental Notice and to Extend or Re-Open the Joining Period is **DENIED**.

Joseph H. McKinley Jr., District Judge
United States District Court

February 19, 2019

cc: counsel of record

7